## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| WABTEC CORPORATION, | ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| STRATO, INC., | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | Court No. 23-00161 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| COALITION OF FREIGHT COUPLER PRODUCERS, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

## <u>DEFENDANT'S SUPPLEMENTAL BRIEF</u>

Of Counsel:

ASHLANDE GELIN
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

EMMA E. BOND
Senior Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
202-305-2034 | emma.e.bond@usdoj.gov

*Attorneys for Defendant*

February 24, 2025

# **TABLE OF CONTENTS**

**PAGE**

I.   What division of authority and legal duties govern the Commerce Department and International Trade Commission's actions related to scope determinations (including the requirement that "such merchandise" subject to an AD/CVD order be injurious)? ..................................................................................1

    A.   Commerce Defines Subject Merchandise And The Commission Determines The Domestic Like Product ...................................................................2

    B.   The Commission Must Determine Whether *Each* Industry Is Materially Injured Or Threatened With Material Injury ...........................................4

    C.   In This Investigation, The Commission's Material Injury Determination Covered The Full Scope Of The Subject Merchandise ............................6

II.   What are the limits, if any, that restrict Commerce's discretion to include products in a final scope determination? ......................................................9

III.   Which tests - if any - should or must be applied by Commerce or the Courts to effectuate those limits? ...............................................................12

# TABLE OF AUTHORTIES

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
    637 F. Supp. 2d 1166 (Ct. Int'l Trade 2009) ........................................................................... 10

*Algoma Steel Corp. v. United States,*
    688 F. Supp. 639 (Ct. Int'l Trade 1988), *aff'd*, 865 F.2d 240 (Fed. Cir. 1989) ........................... 2

*Allegheny Ludlum Corp. v. United States*,
    287 F.3d 1365 (Fed. Cir. 2002) ...................................................................................................... 3

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
    102 F.4th 1252 (Fed. Cir. 2024) ..................................................................................................... 12

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017) ...................................................................................................... 14

*Canadian Solar, Inc. v. United States,*
    918 F.3d 909 (Fed. Cir. 2019) ............................................................................................ 12, 13

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ............................................................................................ 2, 3, 4

*Diversified Prods. Corp. v. United States*,
    572 F. Supp. 883 (Ct. Intl. Trade 1983) ..................................................................................... 12

*Duferco Steel, Inc. v. United States*,
    296 F.3d 1087 (Fed. Cir. 2002) ............................................................................................ 3, 10

*Hitachi Metals, Ltd. v. United States*,
    949 F.3d 710 (Fed. Cir. 2020) ............................................................................................ passim

*Hosiden Corp. v. Advanced Display Mfrs. of Am.*,
    85 F.3d 1561 (Fed. Cir. 1996) ....................................................................................................... 3

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*,
    No. 24-00018, 2025 WL 101073 (Ct. Int'l Trade Jan. 15, 2025) ............................................ 12

*Koyo Seiko Co., Ltd. v. United States*,
    834 F. Supp. 1401 (1993) .............................................................................................................. 2

*Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*,
    844 F.3d 1334 (Fed. Cir. 2016) ............................................................................................ 7, 8

*MacLean Power, LLC v. United States,*
    359 F. Supp. 3d 1367 (Ct. Int'l Trade) .................................................... 13

*Mitsubishi Elec. Corp. v. United States,*
    898 F.2d 1577 (Fed. Cir. 1990) ............................................................... 12

*M S Int'l, Inc. v. United States,*
    32 F.4th 1145 (Fed. Cir. 2022) .................................................... 2, 10, 13

*Nation Ford Chem. Co. v. United States,*
    166 F.3d 1373 (Fed. Cir. 1999) ............................................................... 12

*NMB Sing. Ltd. v. United States,*
    557 F.3d 1316 (Fed. Cir. 2009) ............................................................... 10

*NTN Bearing Corp. of Am. v. United States,*
    747 F. Supp. 726 (1990) ........................................................................... 10

*NTN Bearing Corp. of Am. v. United States,*
    997 F.2d 1453 (Fed. Cir. 1993) ............................................................... 13

*Nucor Corp. v. United States,*
    414 F.3d 1331 (Fed. Cir. 2005) ................................................................. 2

*Pesquera Mares Australes Ltda. v. United States,*
    266 F.3d 1372 (Fed. Cir. 2001) ................................................................. 2

*Texas Instr., Inc. v. United States,*
    681 F.2d 778 (1982) ................................................................................. 14

## **Statutes**

19 U.S.C. § 1516a ......................................................................................... 9

19 U.S.C. § 1671 ................................................................................... 1, 6, 11

19 U.S.C. § 1671a ...................................................................................... 7, 10

19 U.S.C. § 1671b ............................................................................................ 7

19 U.S.C. § 1671d .................................................................................. passim

19 U.S.C. § 1671e ....................................................................................... 4, 9

19 U.S.C. § 1673 ................................................................................... 1, 6, 11

19 U.S.C. § 1673a ................................................................................ 7, 10

19 U.S.C. § 1673b ...................................................................................... 7

19 U.S.C. § 1673d ............................................................................... passim

19 U.S.C. § 1673e .................................................................................. 4, 9

19 U.S.C. § 1677 ................................................................................ passim

19 U.S.C. § 1677k .................................................................................... 11

28 U.S.C. § 2637(d) ............................................................................ 12, 14

## Regulations

19 C.F.R. § 351.309(c)(2) ......................................................................... 14

## Agency Proceedings

*Carbon and Certain Alloy Steel Wire Rod From China, German, and Turkey*,
   Inv. Nos. 731-TA-1099, 731-TA-1100, 731-TA-1101, ISITC Pub. 3832,
   2006 WL 278280 (January 2006) (Preliminary) ...................................... 9

*Cast Iron Soil Pipe Fittings From China: Countervailing Duty Order*,
   83 Fed. Reg. 44566 (Dep't of Commerce Aug. 31, 2018) .......................... 5

*Certain Freight Rail Couplers and Parts Thereof from China*,
   88 Fed. Reg. 43398 (Int'l Trade Comm'n, July 7, 2023) ...................... 1, 6

*Certain Softwood Lumber Prods. from Canada*,
   82 Fed. Reg. 51806 (Dep't of Commerce Nov. 8, 2017)......................... 10

*Circular Seamless Stainless Steel Hollow Products from Japan*,
   Inv. No. 731-TA-859, USITC Pub. 3475, 2001 WL 1700001 (2001) (Remand).................. *9*

*Citric Acid and Certain Citrate Salts from Belgium, Colombia, and Thailand*,
   Inv. Nos. 731-TA-1375, 731-TA-1376, USITC Pub. 4799,
   2018 WL 3471344 (July 2018) (Final) .................................................. 9

*Hydrofluorocarbon Blends From China: Antidumping Duty Order*,
   81 Fed. Reg. 55436 (Dep't of Commerce Aug. 19, 2016)........................ 9

*Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*,
70 Fed. Reg. 5145 (Dep't of Commerce Feb. 1, 2005) ........................................................ 4, 5

*Views of the Commission; Certain Freight Rail Couplers and Parts Thereof from China*,
Inv. Nos. 701-TA-682, 731-TA-1592, USITC Pub. 5438 (July 2023) (Final) ........................ 6

## **Other Authorities**

*Antidumping Duties; Countervailing Duties*,
62 Fed. Reg. 27296 (Dep't of Commerce May 19, 1997) ........................................................ 14

Pursuant to the Court's December 20, 2024 order, defendant, the United States, respectfully responds to the supplemental brief filed by plaintiff, Wabtec Corporation, addressing the three questions issued by the Court.  *See* Wabtec Supp. Br., ECF No. 56 (Wabtec Br.).

**I.      What division of authority and legal duties govern the Commerce Department and International Trade Commission's actions related to scope determinations (including the requirement that "such merchandise" subject to an AD/CVD order be injurious)?**

"Commerce and the Commission play separate and distinct roles" in administering antidumping and countervailing duty investigations.  *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 714 (Fed. Cir. 2020) (citing 19 U.S.C. § 1673); *see also* 19 U.S.C. § 1671.  Commerce is responsible for establishing the scope of the investigation and determining whether subject merchandise is subsidized or sold at less than fair value.  *See, e.g.*, *Hitachi Metals*, 949 F.3d at 714; 19 U.S.C. §§ 1671d(a), 1673d(a).  By contrast, the Commission defines the domestic like product (or products) and the domestic industry, and determines whether the domestic industry has been materially injured.  *See, e.g.*, 19 U.S.C. § 1677(4), (7), (10).

Despite this clear statutory division of authority, Wabtec argues that when defining subject merchandise, "Commerce had an obligation to screen out non-cognizable theories of injury."  Wabtec Br. at 6.  This argument fails because Wabtec has not shown that the Commission—the agency that decides injury—identified any "theories of injury" as "non-cognizable."  *See id.*  Instead, the Commission issued an affirmative final injury determination. *Certain Freight Rail Couplers and Parts Thereof from China*, 88 Fed. Reg. 43,398-43,399 (Int'l Trade Comm'n, July 7, 2023)*.*  Nor has Wabtec shown that *Commerce* had authority to decide injury during the investigation.  Thus, Wabtec cannot establish any defect regarding injury that Commerce allegedly should have "screen{ed}" when establishing the scope.  *See* Wabtec Br. at 6.  Each of these points is addressed in further detail below.

A.     Commerce Defines Subject Merchandise And The Commission Determines The
       Domestic Like Product

Generally, in an antidumping duty investigation, "Commerce investigates whether

subject merchandise is "sold in the United States at less than fair value, *i.e.*, 'dumped.'" *Hitachi*

*Metals*, 949 F.3d at 714 (citing *Cleo Inc. v. United States*, 501 F.3d 1291, 1294 (Fed. Cir. 2007));

*see also, e.g.*, 19 U.S.C. § 1673d(a).  By contrast, "{t}he Commission investigates whether a

U.S. 'domestic industry' is materially injured or threatened with material injury by reason of

those imports." *Id.* (citation omitted); *see, e.g.*, 19 U.S.C. § 1673d(b).

In a countervailing duty investigation, similarly, Commerce determines "whether or not a

countervailable subsidy is being provided with respect to the subject merchandise," 19 U.S.C.

§ 1671d(a), whereas the Commission determines whether an industry in the United States is

materially injured or threatened with material injury by reason of such imports, *id.*

§ 1671d(b)(1); *see also Nucor Corp. v. United States*, 414 F.3d 1331, 1335 (Fed. Cir. 2005)

(citing 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1)).

Commerce and the Commission also make "separate determinations as to the *products*

relevant to their respective inquiries." *Hitachi Metals*, 949 F.3d at 714 (emphasis added).  On

the one hand, "Commerce identifies the scope of imported articles subject to the investigation,

referred to as the 'subject merchandise.'" *Id.* (quoting *Pesquera Mares Australes Ltda. v. United*

*States*, 266 F.3d 1372, 1374-75, 1375 n.2 (Fed. Cir. 2001); 19 U.S.C. § 1677(25)).  Thus,

Commerce has "inherent authority" to define the scope of an investigation.  *M S Int'l, Inc. v.*

*United States*, 32 F.4th 1145, 1151 (Fed. Cir. 2022) (citing *Duferco Steel, Inc. v. United States*,

296 F.3d 1087, 1089 (Fed. Cir. 2002)).

"The Commission, on the other hand, determines the 'domestic like product,'" which is "a U.S. product 'which is like, or . . . most similar in characteristics and uses' to the subject merchandise." *Hitachi Metals*, 949 F.3d at 714 (quoting *Cleo Inc.*, 501 F.3d at 1295; 19 U.S.C. § 1677(10)); *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1368 (Fed. Cir. 2002). The like product determination is "{c}entral" to the ultimate question of whether an *industry* is materially injured by subject merchandise, or threatened with material injury. *See Hitachi Metals*, 949 F.3d at 714; *see also* 19 U.S.C. § 1677(4), (7), (10); 19 U.S.C. §§ 1671d(b), 1673d(b). This is because an "industry" means "the producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product." 19 U.S.C. § 1677(4)(A).

"By statute, the Commission's 'domestic like product' analysis begins with a review of the 'articles subject to investigation,' *i.e.*, the subject merchandise as determined by Commerce." *Hitachi Metals*, 949 F.3d at 715 (quoting 19 U.S.C. § 1677(10). The Commission then evaluates "whether the subject merchandise corresponds with a single domestic like product or multiple domestic like products," based on "a six-factor inquiry," including: "(1) physical characteristics and uses; (2) channels of distribution; (3) interchangeability; (4) customer and producer perceptions; (5) common manufacturing facilities, production processes, and production employees; and where appropriate (6) pricing." *Id.* (citing *Cleo*, 501 F.3d at 1295).

As reflected by this multi-factor inquiry, the Commission's like product determination is separate from Commerce's subject merchandise determination. Commerce's scope determination "does not control the Commission's definition of the industry injured in its sales of like products." *Hosiden Corp. v. Advanced Display Mfrs. of Am.*, 85 F.3d 1561, 1568 (Fed. Cir.

3

1996); *see also Algoma Steel Corp. v. United States*, 688 F. Supp. 639, 644 (Ct. Int'l Trade 1988), *aff'd*, 865 F.2d 240 (Fed. Cir. 1989).  Thus, "{t}he Commission may determine that the subject merchandise identified by Commerce encompasses one or more domestic like products." *Hitachi Metals*, 949 F.3d at 715 (citation omitted).

B.    The Commission Must Determine Whether *Each* Industry Is Materially Injured Or Threatened With Material Injury

In cases with more than one domestic like product, the Commission must determine whether *each* "industry in the United States" is materially injured or threatened with material industry by reason of the subject merchandise covered by Commerce's final determination.  *See, e.g.*, 19 U.S.C. §§ 1671d(b), 1673d(b).  If the Commission determines that one or more domestic industries are not injured by reason of subject merchandise, Commerce will amend the scope of the resulting order to reflect the Commission's affirmative determination of injury.  *See, e.g., Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5,145, 5,146 (Dep't of Commerce Feb. 1, 2005) (amending scope to reflect the "distinction" drawn by the Commission).  Thus, Commerce issues an antidumping or countervailing duty order only after *both* Commerce and the Commission have issued final affirmative determinations, with the resulting orders covering merchandise subject to both affirmative determinations.  *See* 19 U.S.C. §§ 1671e(a), 1673e(a) (governing publication of orders).

For example, in a less-than-fair-value investigation of certain frozen warmwater shrimp from Thailand, the Commission determined "that two domestic like products" existed for the subject merchandise covered by Commerce's final affirmative determination.  *See Certain*

4

*Frozen Warmwater Shrimp from Thailand*, 70 Fed. Reg. 5,145 n.1 (citing the Commission's determination).  Although the Commission found material injury with respect to one domestic like product, the Commission made a negative injury determination regarding the industry associated with the other like product (canned warmwater shrimp and prawns).  *Id.* at 5,145-5,146 & n.1.  The Commission found that "a domestic industry in the United States {was} not materially injured or threatened with material injury by reason of imports of canned warmwater shrimp and prawns from Thailand."  *Id.* at 5,146.  In light of the Commission's determination, Commerce amended the scope of the antidumping duty investigation by excluding "canned warmwater shrimp and prawns" from the scope of the investigation and the resulting order.  *Id.*

Similarly, in a countervailing duty investigation of cast iron soil pipe fittings from the People's Republic of China (China), the Commission "found two domestic like products covered by the scope of the investigation: Drain bodies and all other soil pipe fittings."  *Cast Iron Soil Pipe Fittings From China: Countervailing Duty Order*, 83 Fed. Reg. 44,566 (Dep't of Commerce, Aug. 31, 2018).  Although the Commission found that "imports of cast iron soil pipe fittings {were} materially injuring a U.S. industry," it "made a negative determination with respect to drain bodies."  *Id.*  Commerce limited the scope of the countervailing duty order accordingly.  Because the Commission "made different injury determinations for separate domestic like products," Commerce instructed U.S. Customs and Border Protection to "assess countervailing duties on entries of all cast iron soil pipe fittings (subject merchandise) *other than drain bodies (excluded merchandise)*."  *Id.* at 44,566-67 (emphasis added); *see also Hydrofluorocarbon Blends From China: Antidumping Duty Order*, 81 Fed. Reg. 55,436, 55,437

(Dep't of Commerce, Aug. 19, 2016) (limiting the scope of the order after the Commission's negative injury determination with respect to one of the domestic industries).

      C.      In This Investigation, The Commission's Material Injury Determination Covered The Full Scope Of The Subject Merchandise

In this case, the Commission determined that all freight rail couplers within the scope established by Commerce "belong in a single domestic like product." *See Views of the Commission; Certain Freight Rail Couplers and Parts Thereof from China* at 11-13 (Final Commission Determination)*, * Inv. Nos. 701-TA-682, 731-TA-1592, USITC Pub. 5438 (July 2023).  Because an "industry" generally means "the producers as a whole of a domestic like product," 19 U.S.C. § 1677(4) (listing additional criteria), the Commission also defined "a single domestic industry," *Final Commission Determination* at 22*,* Inv. Nos. 701-TA-682, 731-TA-1592.  Finally, the Commission made an affirmative final determination that "an industry in the United States is materially injured by reason of imports" that Commerce found to be sold at less than fair value and subsidized by the government of China.  *Id.* at 3, 27; *see also Certain Freight Rail Couplers and Parts Thereof from China*, 88 Fed. Reg. 43,398-43,399.

Wabtec nonetheless argues that when defining the scope, "Commerce had an obligation to screen out non-cognizable theories of injury."  Wabtec Br. at 6.  Again, however, the Commission made an affirmative finding that the sole domestic industry was materially injured by reason of subject imports, *Certain Freight Rail Couplers and Parts Thereof from China*, 88 Fed. Reg. at 43,399, thus satisfying the statutory injury requirement, 19 U.S.C. §§ 1671(a)(2), 1673(a)(2).  Nor has Wabtec shown that the Commission found any "theories" of injury "non-cognizable" (or, if the Commission had done so, how such a finding would be relevant under the

statutory scheme).  *See* Wabtec Br. at 6.  Accordingly, Wabtec's claimed concern about an investigation in which "the Commission believed that any injuries attributable to attached couplers were noncognizable," Wabtec Br. at 3, is simply not present in this case.[1]

Thus, the only way for Wabtec to establish purported "non-cognizable theories of injury" in this case would be if *Commerce*—not the Commission—had authority to decide injury during an investigation.  Wabtec cannot make this showing.  Although Commerce assesses the sufficiency of an antidumping or countervailing duty petition—including allegations of injury—in deciding whether "a formal investigation is warranted," *see* 19 U.S.C. §§ 1671a(a), 1673a(a), only the Commission decides material injury during the investigation.  *See* 19 U.S.C. §§ 1671b(a), 1673b(a), 1671d(b), 1673d(b), 1677(7); *see also Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*, 844 F.3d 1334, 1338-1339 (Fed. Cir. 2016).

In the preliminary determination, for example, the Commission decides "whether there is a reasonable indication" a domestic industry is "materially injured" or "threatened with material injury," or "the establishment of an industry in the United States is materially retarded" by reason of imports of subject merchandise.  19 U.S.C. §§ 1671b(a)(1), 1673b(a)(1).  The Commission also determines whether "imports of subject merchandise are not negligible."  19 U.S.C. §§ 1671b(a)(1), 1673b(a)(1).  At the final determination stage, similarly, "{t}he

---

[1] To the extent Wabtec believes that the Commission was required to make injury determinations with respect to individual *products* within the domestic like product (rather than for the relevant domestic industry as a whole), Wabtec has not identified any statutory support for that theory—nor is the case against Commerce the correct venue to make such an argument regarding injury.  Arguments regarding injury are for the Commission to decide, with any challenges raised in the separate case against the Commission.  *See, e.g.*, *Wabtec Corp. v. United States*, Ct. Int'l Trade No. 23-157.

Commission shall make a final determination" whether an industry in the United States "is materially injured" or "threatened with material injury" by reason of imports or sales subject to Commerce's affirmative determination. *See* 19 U.S.C. §§ 1671d(b), 1673d(b).

Similarly, the definition of material injury clearly provides that "*the Commission*, in each case, . . . shall consider" specific issues when determining injury. 19 U.S.C. § 1677(7) (emphasis added). "{T}he Commission . . . shall consider . . . the volume of imports of the subject merchandise{.}" *Id.* § 1677(7)(B)(i)(I). "{T}he Commission . . . shall consider . . . the effect of imports of that merchandise on prices in the United States for domestic like products{.}" *Id.* § 1677(7)(B)(i)(II). "{T}he Commission . . . shall consider . . . the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States{.}" *Id.* § 1677(7)(B)(i)(III). "{T}he Commission . . . may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports." 19 U.S.C. § 1677(7)(B)(ii). Thus, the Commission—not Commerce—determines injury. *See* 19 U.S.C. § 1677(7)(B).

Wabtec argues that Commerce *must* have authority to decide matters of injury because "{o}nce the Commission finds some in-scope imports to cause material injury, final orders necessarily cover the entire scope, notwithstanding the lack of injury attributable to a subset of that merchandise." Wabtec Br. at 2 (citations omitted); *see also* Wabtec Br. at 3-4 (citing *Kyocera Solar*, 844 F.3d at 1336). But this tenuous logic does not overcome the clear statutory authority for the Commission—not Commerce—to decide injury during an investigation. *See,*

*e.g.*, 19 U.S.C. §§ 1671d(b), 1673d(b), 1677(7).[2]  Moreover, Wabtec's argument is based on a false premise.  It is not accurate that "final orders necessarily cover the entire scope" after the Commission's affirmative injury finding regarding "some" in-scope imports.  *See* Wabtec Br. at 2.  Even Wabtec acknowledges two significant exceptions to its proposed rule—namely, investigations involving imports from multiple countries and (as discussed in Section 1.B above) investigations involving two or more domestic industries.  Wabtec Br. at 3.  As discussed above, the Commission's negative injury determination with respect to one or more domestic industries will result in Commerce limiting the scope of an order.  *See, e.g.*, *Cast Iron Soil Pipe Fittings From China: Countervailing Duty Order*, 83 Fed. Reg. 44,566 (Dep't of Commerce, Aug. 31, 2018).  In sum, Wabtec has not shown that Commerce's determination of scope authorizes Commerce to make determinations of material injury that are reserved for the Commission.

## II.    What are the limits, if any, that restrict Commerce's discretion to include products in a final scope determination?

By law, the subject merchandise within the scope of an order must reflect a single class or kind of merchandise.  *See* 19 U.S.C. § 1677(25).  Within these limits, Commerce must describe the subject merchandise subject to an order "in such detail as {Commerce} deems necessary."  19 U.S.C. §§ 1671e(a)(2), 1673e(a)(2).  If challenged before this Court,

---

[2]  The Commission decisions cited by Wabtec do not show otherwise.  *See* Wabtec Br. at 2 (citing *ITC, Citric Acid and Certain Citrate Salts from Belgium, Colombia, and Thailand*, 2018 WL 3471344, at \*21; *ITC, Carbon and Certain Alloy Steel Wire Rod From China, German, and Turkey*, 2006 WL 278280; *ITC*, *Circular Seamless Stainless Steel Hollow Products from Japan*, 2001 WL 1700001, at \*2 n.6 (2001)).  None of these decisions state that Commerce has authority to decide material injury during an investigation.

Commerce's final scope determination must be supported by substantial evidence and otherwise in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

Thus, in this case, the Court should consider whether substantial evidence supports Commerce's determination that the merchandise included in the scope reflects a single class or kind of merchandise, *i.e.*, whether freight rail couplers attached to rail cars are the same class or kind of merchandise as unattached freight rail couplers. *See* Appx12237-12241. As discussed in our brief, substantial evidence supports Commerce's finding that the orders covering attached and unattached freight rail couplers applied to a single class or kind of merchandise. *See, e.g.*, Gov't Br at 29-37, ECF No. 36.

Additionally, Commerce may not, without explanation, depart from a prior established practice. *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) (citation omitted). Commerce has an established practice of providing "ample deference to the petitioner with respect to the definition of the products for which it seeks relief" during an antidumping or countervailing duty investigation. *See Certain Softwood Lumber Prods. from Canada*, 82 Fed. Reg. 51,806 (Dep't of Commerce, Nov. 8, 2017), and accompanying IDM at Comment 2.[3]

Consistent with this practice, the Federal Circuit has explained that "{t}he petition initially determines the scope of the investigation." *Duferco Steel*, 296 F.3d at 1089; *see also* 19

---

[3] Nonetheless, Commerce has "inherent power to establish the parameters of the investigation," and is not "tied to" the initial scope definition. *M S Int'l*, 32 F.4th at 1151 (citing *Duferco Steel*, 296 F.3d at 1089). Commerce departs from the scope as proposed in the petition in narrow circumstances, such as when the petition is "overly broad, or insufficiently specific to allow proper investigation, or in any other way defective," or to prevent "the intentional evasion or circumvention" of an order. *M S Int'l*, 32 F.4th at 1151 (citations omitted). In this proceeding, however, Commerce found that including attached freight rail couplers in the scope was administrable. *See, e.g.*, Appx12243-12246.

U.S.C. §§ 1671a(b), 1673a(b).  Indeed, this Court has held that "{i}f the petition is deemed

sufficient, {Commerce} is statutorily obliged to insure that the proceedings are maintained in a

form which corresponds to the petitioner's clearly evinced intent and purpose."  *NTN Bearing*

*Corp. of Am. v. United States*, 747 F. Supp. 726, 730 (1990) (citations omitted).  Commerce

routinely uses the scope set forth in the petition to initially establish the scope of the

investigation.  Appx11972 (citing, *e.g.*, *Ad Hoc Shrimp Trade Action Comm. v. United States*,

637 F. Supp. 2d 1166, 1174-75 (Ct. Int'l Trade 2009)).

Wabtec argues that "Commerce cannot issue a final order unless all 'elements necessary

for the imposition of a duty … exist.'"  Wabtec Br. at 7 (citing 19 U.S.C. § 1671a(a)).  In this

case, however, Commerce issued final affirmative determinations that the subject merchandise

was sold for less than fair value and subsidized pursuant to 19 U.S.C. §§ 1671d(a) and 1673d(a),

and the Commission issued a final affirmative determination that an industry associated with the

domestic like product—which mirrored the subject merchandise—was materially injured

pursuant to 19 U.S.C. §§ 1671d(b) and 1673d(b).  The resulting orders satisfy all statutory

requirements for the imposition of antidumping and countervailing duties.

Nor has Wabtec shown that Commerce's instruction to remove export sales from the

petition's calculation of the "total U.S. market" is relevant to the Commission's injury

determination.  *See* Wabtec Br. at 6-7 (citing Appx2561).  To the extent Wabtec believed the

issue was relevant to the final determination of injury, that would be a matter for the

Commission to decide, with any challenges raised in the separate case against the Commission.

*See, Wabtec Corp. v. United States*, Ct. Int'l Trade No. 23-157; *see also* Appx12241 (stating "the

types of data collected for an injury determination is within the purview of the Commission").

11

Finally, Wabtec's reliance on the separate provision regarding third-country dumping is inapposite. Wabtec Br. at 7 (citing 19 U.S.C. § 1677k). Following affirmative final determinations by both Commerce and the Commission, all statutory requirements to impose an antidumping and countervailing duty orders were satisfied. *See* 19 U.S.C. §§ 1671, 1673. The separate provision governing a domestic industry's ability to petition the Trade Representative for relief regarding third country dumping does not apply. *See* 19 U.S.C. § 1677k.

### III.    Which tests - if any - should or must be applied by Commerce or the Courts to effectuate those limits?

Whether subject merchandise is a single "class or kind of merchandise" is a factual question that must be assessed on the record developed by interested parties, based on arguments exhausted at the agency level. *See* 19 U.S.C. § 1677(25); 28 U.S.C. § 2637(d); *see also QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (stating "the burden of creating an adequate record lies with {interested parties}"). "Commerce must exercise its discretion 'in light of all the facts before' it and in a manner that reflects Commerce's 'judgment regarding the scope and form of an order that will best effectuate the purpose of the {Tariff Act} and the violation found.'" *Canadian Solar, Inc. v. United States,* 918 F.3d 909, 917 (Fed. Cir. 2019) (quoting *Mitsubishi Elec. Corp. v. United States*, 898 F.2d 1577, 1583 (Fed. Cir. 1990)).[4]

---

[4] Wabtec does not argue that Commerce misinterpreted what constitutes a "class or kind" of merchandise, but instead challenges Commerce's methodology of comparing freight rail couplers attached to freight rail cars and unattached freight rail couplers. Because there is "no real dispute about the ambiguity or meaning of the statute," this Court considers whether Commerce's analysis is supported by substantial evidence. *See Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, No. 24-00018, 2025 WL 101073, at *3-*4 & n.4 (Ct. Int'l Trade Jan. 15, 2025). In any event, whether merchandise qualifies as a single "class or kind" reflects a general standard committing "to Commerce's discretion the question of whether particular facts

When determining whether products constitute different classes or kinds of merchandise, Commerce typically "looks for clear dividing lines" through the application of the factors set out in *Diversified Products Corp. v. United States*. *See Notice of Final Determination of Sales at Less Than Fair Value: Certain Softwood Lumber Products from Canada*, 67 Fed. Reg. 15,539 (Dep't of Commerce, April 2, 2002), and IDM at cmt. 52 (citing *Diversified Products Corp. v. United States*, 572 F. Supp. 883, 884, 889 (Ct. Int'l Trade 1983)). Consistent with this approach, in this investigation, Commerce explained that it "looks for 'clear dividing lines' between products," and disagreed that freight rail couplers "become a different class or kind of merchandise when attached to freight railcars." Appx12240.

Moreover, Commerce is not required to articulate a single standard to govern establishing the scope of an order. *See, e.g.*, *Canadian Solar,* 918 F.3d at 917. Instead, Commerce may determine what methodology applies based on the facts of the proceeding and arguments made by interested parties. In one case, for example, the Court of Appeals for the Federal Circuit held that, although Commerce used a different analysis for determining "class or kind" than it had in prior investigations, Commerce provided a "reasoned explanation" for the departure. *Canadian Solar,* 918 F.3d at 918-919. The Court agreed that there was "good reason" to allow such flexibility to ensure an adequate "remedy" for dumping and unfair subsidization. *Id.* at 919. "{I}t would make little sense for Commerce to expend significant resources investigating certain imports, and for the {Commission} to determine that those imports were causing injury to a

---

satisfy the statute." *See Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1260 (Fed. Cir. 2024) (citing *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999)) (discussing a broad statutory mandate elsewhere in the antidumping duty statute).

domestic industry, if Commerce were precluded from including those imports within the scope of the . . . order{s} arising out of the . . . investigation{s}." *Id.* (quoting *NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453, 1457 (Fed. Cir. 1993)). In this case, similarly, Commerce and the Commission issued affirmative final determinations based on the scope of the investigation, and Wabtec's challenges ignore the remedial purpose of the antidumping and countervailing duty laws.

Wabtec also argues that Commerce's class or kind inquiry must compare subject merchandise with "the product coming across the border." Wabtec Br. at 9. This argument is wrong. In support of its theory, Wabtec cites scope *ruling* cases involving whether specific merchandise coming across the border falls within the scope of an existing order. *Id.* (citing, *e.g.*, *MacLean Power, LLC v. United States*, 359 F. Supp. 3d 1367, 1372 & nn.3-4 (Ct. Int'l Trade 2019)). Yet, Wabtec cites no authority for applying this analysis when reviewing final *scope determinations* establishing the scope of an investigation and the resulting order. The Federal Circuit has highlighted Commerce's discretion in this area, explaining that, compared with altering scope in an existing order, Commerce has "greater discretion" when determining the scope "before any final determination or order issued." *M S Int'l*, 32 F.4th at 1152.

Wabtec faults Commerce for "fail{ing} to apply" *Diversified Products*, Wabtec Br. at 8, but Wabtec failed to exhaust administrative remedies with respect to this argument, *see* 28 U.S.C. § 2637(d), and waived the argument by failing to raise it in Wabtec's opening brief. Interested parties have the opportunity to raise "issues regarding product coverage" early in the investigation. *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,323 (Dep't of Commerce, May 19, 1997). Any scope disputes remaining after the preliminary determination

14

must be raised in the case briefs. *See* 19 C.F.R. § 351.309(c)(2). Wabtec failed to present arguments regarding the *Diversified Products* criteria in its scope case brief. *See* Appx12074-12077. Nor can Wabtec establish that any of the limited exceptions to the exhaustion requirement apply. Thus, the Court should decline to entertain Wabtec's new arguments made for the first time in this Court. *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (vacating a decision that failed to require exhaustion of administrative remedies).

Rather than disputing the *Diversified Products* factors in scope briefing to Commerce, interested parties focused on the substantial transformation analysis. *See* Appx12164, Appx12166 (Amsted brief); Appx12076 (Wabtec brief incorporating Amsted's "substantial transformation" arguments); Appx12186 (Government of Mexico brief). On this issue, Commerce reasonably found that "freight rail couplers are not substantially transformed into a distinct class or kind of merchandise" when attached to a freight railcar. Appx12238. Instead, freight rail couplers "retain their own identity even after being attached to or mounted on a railcar." Appx12240.

Wabtec argues that Commerce wrongly compared a freight rail coupler attached to a rail car to an unattached freight rail coupler, claiming that Commerce should have compared a freight rail coupler to a *railcar*. *See* Wabtec Br. at 8-9. But railcars are not included in the scope of the orders. *See* Appx12238. The statute does not require *non*-subject merchandise (like railcars) to be the same class or kind of merchandise as subject merchandise. 19 U.S.C. § 1677(25). Because railcars are not subject merchandise, Wabtec's argument fails. In sum, Commerce reasonably determined that attached and unattached freight rail couplers covered by the orders are the same class or kind of merchandise. *See* Appx12237-12241.

15

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

                                                    /s/ Emma E. Bond
                                                    EMMA E. BOND
ASHLANDE GELIN                                      Senior Trial Counsel
Attorney                                            Commercial Litigation Branch
Office of the Chief Counsel                         U.S. Department of Justice
    for Trade Enforcement & Compliance              P.O. Box 480
U.S. Department of Commerce                         Washington, DC 20044
                                                    (202) 305-2034
                                                    Email: emma.e.bond@usdoj.gov

February 24, 2025                                   Attorneys for Defendant

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that Defendant's Supplemental Brief, filed on February 24, 2025 complies with the page limitation of 15 pages set forth in the Court's December 20, 2024 order. The page count for Defendant's Supplemental Brief is 15 double-spaced pages, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature.

Dated: February 24, 2025          /s/ Emma E. Bond
                                  Emma E. Bond
                                  Counsel for Defendant