IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WABTEC CORPORATION and STRATO INC., <br><br>     **Plaintiff,** <br><br>   **and,** <br><br> STRATO, INC., <br><br>     **Plaintiff-Intervenor,** <br><br>   **v.** <br><br> UNITED STATES, <br><br>     **Defendant,** <br><br>   **and,** <br><br> COALITION OF FREIGHT COUPLER PRODUCERS, <br><br>     **Defendant-Intervenor .** | Before: Hon. Gary S. Katzmann, Judge <br><br> Court No. 23-00161 |

## RESPONSES TO QUESTIONS FOR ORAL ARGUMENT

Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

Buchanan Ingersoll & Rooney PC
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000

*Counsel to Coalition of Freight Coupler Producers*

Dated: July 21, 2026

**TABLE OF CONTENTS**

1.  Wabtec argues that "{t}he phrase by reason of . . . 'requires, at the least, but-for causation.' " Wabtec Corp.'s Rule 56.2(H) Cmts. on the Dep't of Com.'s Remand Determination at 5, May 13, 2026, ECF No. 78 ("Pl.'s Cmts.") (quoting *Changzhou Trina Solar Energy Co. v. Int'l Trade Com.*, 879 F.3d 1377, 1382 (Fed. Cir. 2018) and citing *Burrage v. United States*, 571 U.S. 204, 213 (2014)). What support do suggest for a different interpretation of "by reason of"? ...................................................................... 1

2.  Do any of the investigations Commerce cites as support involve a similar two-purchaser theory? See Remand Results at 12–13 (citing Certain Vertical Shaft Engines *Between 99cc and Up to 225cc, and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 23675 (Dep't Com. May 4, 2021); *Certain Walk-Behind Lawn Mowers and Parts Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 27379 (Dep't Com. May 20, 2021); *Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order*, 86 Fed. Reg 36093 (Dep't Com. July 8, 2021); *Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Countervailing Orders*, 90 Fed. Reg. 38753 (Dep't Com. Aug 12, 2025); *Aluminum Extrusions from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80506 (Dep't Com. Oct. 3, 2024); *Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 45952 (Dep't Com. Sep. 3, 2019))....................................................................................................... 2

3.  Which purchase—the first purchase in Mexico or the second purchase in the United States—causes the harm to the domestic industry? Would the domestic industry experience the same harm even if the second purchase never occurred? ....................... 4

4.  You argue that Commerce's remand redetermination is consistent with the Commission's choice not to make a separate injury finding for attached FRCs. *See* Remand Results at 11. Could the Commission have issued separate determinations? *See* Pl.'s Cmts. at 11 ("The Commission . . . lacks authority to subdivide merchandise based on misgivings about the validity of certain theories of injury embodied in the scope."). What is the level of the Commission's discretion here? ................................... 4

5.  Has Commerce sufficiently contemplated whether its determination could mean that "petitioners could sneak products that cannot cause injury by reason of import into duty orders simply by including them in proposed scope language that also includes products that cause significant injury"? *Id.* at 12 (quoting *Wabtec Corp. v. United States*, 49 CIT __, __, 815 F. Supp. 3d 1390, 1412 (2025))............................................................. 5

6.  Did Commerce impermissibly "load{} the dice in Petitioner's favor" when it deferred to Petitioner's scope definition? *Id.* at 2............................................................................... 6

7.  Did Commerce impermissibly base its determination on a view that "Wabtec's injury argument simply repackaged the substantial-transformation argument that Commerce had already rejected"? *Id.* at 3–4..................................................................................... 7

**8.** **How is the harm to the domestic industry caused by attached FRCs different from the harm contemplated by the third-country dumping provision at 19 U.S.C. § 1677k(b)(1)?**................................................................................................... **8**

**9.** **What authorities best support your overall argument?**...................................................... **9**

**10.** **Are there any recent or pending Supreme Court, Federal Circuit, or USCIT cases that may affect the court's analysis?**.......................................................................... **10**

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 915, 637 F. Supp. 2d., 1175 (2009) .................................................................................................................................. 6, 9

*Cleo, Inc. v. United States*, 501 F.3d, 1291 (Fed. Cir. 2007)...................................................... 5, 6

*Hosiden Corp. v. Advanced Display Manufacturers of America*, 85 F.3d 1561 (Fed. Cir. 1996).. 5

*M.S. Int'l, Inc. v. United States*, 32 F.4th 1145 (Fed. Cir. 2022)................................................ 6, 9

*Mitsubishi Elec. Corp. v. United States*, 12 C.I.T. 1025, 700 F. Supp. 538, (1988)................... 7, 9

*Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867 (Fed. Cir. 2008) .............................. 2

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)........................................... 3

*Wabtec Corp. v. United States*, 49 CIT __, 815 F. Supp. 3d 1390 (Ct. Int'l Trade 2025).......... 6, 7

**Statutes**

19 U.S.C. § 1673(2)(A)(i)................................................................................................................ 7

19 U.S.C. § 1677k(b)(1) ................................................................................................................. 8

19 U.S.C. § 1671(2)(A)(i)............................................................................................................... 7

**Other Authorities**

*Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Countervailing Orders,* 90 Fed. Reg. 38,753 (Dep't Commerce Aug. 12, 2025) ...................... 3

*Certain Freight Rail Couplers and Parts Thereof from China*, Inv. Nos. 701-TA-682 and 731-TA-1592, USITC Pub. 5438 (July 2023) (Final)........................................................ 1, 2, 5, 6, 8

*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Countervailing Duty Order*, 88 Fed. Reg. 45,135 (Dep't Commerce July 14, 2023) ................ 8

S. Rep. No. 96-249 (1979)............................................................................................................... 3

**INTRODUCTION**

Defendant-Intervenor, the Coalition of Freight Coupler Producers, hereby submits these responses to the Court's questions for oral argument. Questions for Oral Argument ECF No. 89.

1.     **Wabtec argues that "{t}he phrase by reason of . . . 'requires, at the least, but-for causation.' " Wabtec Corp.'s Rule 56.2(H) Cmts. on the Dep't of Com.'s Remand Determination at 5, May 13, 2026, ECF No. 78 ("Pl.'s Cmts.") (quoting *Changzhou Trina Solar Energy Co. v. Int'l Trade Com.*, 879 F.3d 1377, 1382 (Fed. Cir. 2018) and citing *Burrage v. United States*, 571 U.S. 204, 213 (2014)). What support do suggest for a different interpretation of "by reason of"?**

Plaintiff misunderstands the "by reason of" standard in the context of the Tariff Act of 1930. Plaintiff cites *Changzhou Trina Solar Energy Co. v. Int'l Trade Comm'n*, 879 F.3d 1377, 1382 (Fed. Cir. 2018), in support of the idea that "duties are permitted only where, but for 'imports or sales of' the subsidized and/or dumped merchandise, the domestic industry would have avoided injury." *See* Wabtec Comments on Commerce Remand Results at 5, ECF 80. Plaintiff provides the further quote that, "The traditional but-for causation standard . . . 'directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.'" *Id.* (quoting *United States v. Skrmetti*, 605 U.S. 495, 520 (2025)).

The U.S. International Trade Commission elucidated the "by reason of" standard in the injury context in its affirmative injury determination in its companion investigation to the underlying investigation on appeal here. *See Certain Freight Rail Couplers and Parts Thereof from China*, Inv. Nos. 701-TA-682 and 731-TA-1592, USITC Pub. 5438 (July 2023) (Final) ("Pub. 5438"). Its explanation was as follows:

> Although the statute requires the Commission to determine whether the domestic industry is "materially injured or threatened with material injury by reason of " unfairly traded imports, it does not define the phrase "by reason of," indicating that this aspect of the injury analysis is left to the Commission's reasonable exercise of its discretion. . . . This evaluation under the 'by reason of" standard must ensure that subject imports are more than a minimal or tangential cause of injury and that there is a sufficient causal, not merely a temporal, nexus between subject imports and material injury.

1

*Id.* at 28 (internal citations omitted). *Mittal Steel Point Lisas Ltd. v. United States* ("*Mittal Steel*") is the seminal Federal Circuit precedent on the meaning of the "by reason of" standard. 542 F.3d 867 (Fed. Cir. 2008). In *Mittal Steel*, the Federal Circuit articulated, "While the Commission may not enter an affirmative determination unless it finds that a domestic industry is materially injured 'by reason of' subject imports, the Commission is not required to follow a single methodology for making that determination . . . . {and has} broad discretion with respect to its choice of methodology." *Id.* at 873. The *Mittal* Court further found, "To say that an affirmative determination must be based on evidence that the injury to the domestic industry is 'by reason of' subject imports does not require the Commission to address the causation issue in any particular way . . . ," *id.* at 876, and that that there is not a "Procrustean formula for determining whether a domestic injury was 'by reason of' subject imports," *id.* at 879. Plaintiff would have the Court apply such a Procrustean formula to this "by reason of" standard. Importantly, this precedent underscores that whether the domestic industry was injured "by reason of" subject imports is a question left to the Commission in an antidumping and countervailing duty investigation and is not appropriately at issue in an appeal of a scope determination. Most importantly, it is the Commission, not Commerce, that applies the injury "by reason of" subject import standards in its analysis.

2.      **Do any of the investigations Commerce cites as support involve a similar two-purchaser theory? See Remand Results at 12–13 (citing Certain Vertical Shaft Engines *Between 99cc and Up to 225cc, and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 23675 (Dep't Com. May 4, 2021); *Certain Walk-Behind Lawn Mowers and Parts Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 27379 (Dep't Com. May 20, 2021); *Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order*, 86 Fed. Reg 36093 (Dep't Com. July 8, 2021); *Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Countervailing Orders*, 90 Fed. Reg. 38753 (Dep't Com. Aug 12, 2025); *Aluminum Extrusions from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80506 (Dep't**

**Com. Oct. 3, 2024);** *Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China: Antidumping and Countervailing Duty Orders*, **84 Fed. Reg. 45952 (Dep't Com. Sep. 3, 2019)).**

Defendant-Intervenor restates its concerns as to two matters. First, that a scope, a physical description of merchandise, must articulate a "cognizable theory of injury" is a concept that is wholly absent from the statute or case law. Second, Plaintiff attempts to have Commerce supplant the Commission in its injury analysis. This is contrary to Congressional intent. Indeed, the Federal Circuit has recognized that Congress has delegated this factual finding to the Commission, not Commerce, because of the agency's institutional expertise in resolving injury issues. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350 (Fed. Cir. 2006); *see also* S. Rep. No. 96-249, at 75 (1979) ("The determination of the ITC with respect to causation is . . . complex and difficult, and is a matter for the judgment of the ITC.").

Commerce's explanation that, "When Wabtec compares the lawnmower scenario to the sale of the FRC, it does not appear to contemplate the second purchase in the United States . . . ," *see* Remand Results at 17, ECF 76, illustrates the mechanism of purchases under the fact pattern in the instant case. Whether there is a second purchase in the United States or not, if there is an import of any of the merchandise covered by the antidumping and countervailing duty orders cited above, irrespective of whether that merchandise was assembled with non-subject merchandise and attached thereto in a third country, the import of that subject merchandise would be found to have caused injury to the domestic industry if it is subject to an antidumping duty order. If, for example, a brake drum produced in China was mounted onto a drum-hub assembly in Third Country X, and imported into the United States, that import would be considered in the U.S. International Trade Commission's injury determination because it is expressly included in the scope. *See Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Countervailing Orders,* 90 Fed. Reg. 38,753, 38,755 (Dep't Commerce Aug. 12, 2025). Defendant-Intervenor

3

again underscores that issues of what merchandise, and the means by which it is imported, causes injury to the domestic industry is properly the subject of the Commission's purview in antidumping investigations and is not the subject of an appeal of a Department of Commerce scope determination.

3.      **Which purchase—the first purchase in Mexico or the second purchase in the United States—causes the harm to the domestic industry? Would the domestic industry experience the same harm even if the second purchase never occurred?**

The import causes harm to the domestic industry. As Commerce noted in its remand results, "The second purchaser of FRCs is in the United States, and when that purchaser opts for a railcar with an attached FRC of Chinese origin, the harm to the United States FRCs industry occurs by reason of such imports." Remand Results at 18, ECF 76. To further illustrate this example based on the factual record in this investigation, if a U.S. railcar producer with Mexican production operations purchases a Chinese freight rail coupler instead of a U.S. freight rail coupler, this would be a lost sale in the United States, especially when it purchases U.S. product in the United States. Again, however, the evidence as to injury is on the Commission's record, the agency statutorily designated to address injury issues.

Plaintiff is requesting that Commerce make a definitive ruling on issues that are outside of its expertise, namely, injury, at the very initiation of an investigation. In short, the question the Court poses, while potentially appropriate for an appeal of the injury determination, goes beyond the Commerce's statutory expertise in initiating an investigation.

4.      **You argue that Commerce's remand redetermination is consistent with the Commission's choice not to make a separate injury finding for attached FRCs. *See* Remand Results at 11. Could the Commission have issued separate determinations? *See* Pl.'s Cmts. at 11 ("The Commission . . . lacks authority to subdivide merchandise**

4

**based on misgivings about the validity of certain theories of injury embodied in the scope."). What is the level of the Commission's discretion here?**

Yes, the Commission could have issued separate injury determinations if Plaintiffs had argued for separate domestic like products in the underlying investigation. Additionally, Plaintiffs could have argued that there was attenuation of competition because of mounted FRCs or for other findings regarding causation and mounted versus unmounted FRCs. The Commission has wide discretion to evaluate separate domestic like products and Defendant-Intervenor underscores that, "Commerce's {scope} finding does not control the Commission's {like product} determination." *Cleo, Inc. v. United States*, 501 F.3d, 1291, 1298 n.1 (Fed. Cir. 2007); *see also Hosiden Corp. v. Advanced Display Manufacturers of America*, 85 F.3d 1561, 1568 (Fed. Cir. 1996). However, as the Commission's Views note, "Respondents do not address the issue of the domestic like product definition in the final phase of these investigations." Pub. 5438 at 10.  Plaintiffs failed to make these arguments before the Commission and now attempt to attack the injury finding in an appeal of Commerce's decision.

5.    **Has Commerce sufficiently contemplated whether its determination could mean that "petitioners could sneak products that cannot cause injury by reason of import into duty orders simply by including them in proposed scope language that also includes products that cause significant injury"? *Id.* at 12 (quoting *Wabtec Corp. v. United States*, 49 CIT __, __, 815 F. Supp. 3d 1390, 1412 (2025)).**

Yes, Commerce's remand results thoroughly address this issue. Its remand results state that "Commerce strives to craft a scope that both includes the specific products for which the petitioner, the injured party, requests relief, and excludes those products that would otherwise fall within the general physical description of products in the scope, but for which the petitioner does not seek relief." Remand Results at 8-9, ECF 76. The Court's concern was that "So long as some in-scope merchandise causes a large enough injury to result in the Commission's affirmative injury determination regarding the merchandise as a whole, the in-scope merchandise causing the injury

could mask the presence of in-scope merchandise that causes no injury whatsoever." *Wabtec Corp. v. United States*, 49 CIT __, __, 815 F. Supp. 3d 1390, 1412 (2025). Commerce addressed this concern by noting that, "{I}t is not unusual for AD/CVD orders to include language within the scope that covers merchandise that is further assembled or attached to non-subject merchandise. Such scopes do not create an 'overly broad result,' that could cause certain products causing injury to mask the lack of injury from other products . . . ." Remand Results at 11, ECF 76. Accordingly, Commerce sufficiently contemplated this question and directly addressed the Court's concerns.

Moreover, it was the petitioner's stated intent to include both mounted and unmounted FRCs in the scope based on a good faith belief that it was being injured by subject imports of both mounted and unmounted FRCs. Indeed, the Commission's injury determination found injury by imports entered under the scope. *See generally* Pub. 5438. Fundamentally, no domestic industry would sneak products against which it is not competing into the scope. It bears repeating that, as the Federal Circuit has stated, Commerce's scope finding does not control the Commission's domestic like product determination, *see Cleo*, 501 F.3d at 1298 n.1, and Plaintiffs failed to challenge this issue before the Commission.

**6.      Did Commerce impermissibly "load{} the dice in Petitioner's favor" when it deferred to Petitioner's scope definition?** *Id.* **at 2.**

No, deference to a Petitioner's scope definition is not "loading the dice" in Petitioner's favor. Commerce appropriately deferred to Petitioner's scope definition, consistent with Federal Circuit precedent. Commerce, in determining the scope definition, must "stay{} within the bounds of 'the intent of the petition.'" *M.S. Int'l, Inc. v. United States*, 32 F.4th 1145, 1151 (Fed. Cir. 2022) (quoting *Minebea Co. v. United States*, 16 C.IT. 20,22, 782 F. Supp. 117, 1220 (1992)). Commerce can modify a petitioner's proposed scope definition only in two limited circumstances: when the scope language is "'overly broad, or insufficiently specific to allow proper investigation,

or in any other way defective,'" *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 915, 924, 637 F. Supp. 2d. 1166, 1175 (2009) (quoting *NTN Bearing Corp.*, 14 C.I.T. 623, 627, 747 F. Supp. 726, 731 (1990)), and Commerce may set the scope "with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law," *Mitsubishi Elec. Corp. v. United States*, 12 C.I.T. 1025, 1046, 700 F. Supp. 538, 555 (1988).

Commerce acknowledged this deference in its remand results, stating, "By including attached FRCs in the scope of these investigations as part of Commerce's ultimate authority to determine the scope, we followed our practice in investigations to provide ample deference to the petitioner to clarify and identify the products for which it seeks relief." Remand Results at 8, ECF 76. This deference is not a "loading of the dice" in the petitioner's favor but rather ensures that the injured party can state how and by what products it has been injured. Here, the domestic industry subsequently proved material injury before the agency that is statutorily directed to make such a determination: the Commission.

**7.     Did Commerce impermissibly base its determination on a view that "Wabtec's injury argument simply repackaged the substantial-transformation argument that Commerce had already rejected"?** *Id.* **at 3–4.**

No. Commerce addressed this in its remand results. It noted:

Wabtec makes an analogy of Chinese nails sold to furniture manufacturers in Mexico, but is not injured by the subsequent import of the resulting furniture into the United States. However, this analogy concerns a product that is substantially transformed through its inclusion into a downstream product. Unlike nails used to produce furniture, Commerce determined based on record evidence that an FRC is not permanently attached to a railcar but is designed to be removable and replicable without undergoing physical changes when attached to or removed from railcars.

Remand Results at 16, ECF 76. The Commission is mandated to consider whether "an industry in the United States . . . is materially injured . . . by reason of imports of {subject} merchandise." *See* 19 U.S.C. §§ 1671(2)(A)(i), 1673(2)(A)(i). If an article has been substantially transformed, what is considered "the import" for purposes of an antidumping or countervailing duty scope may

7

change. Commerce found, and the Court affirmed on the basis of substantial evidence, that freight rail couplers are not substantially transformed when mounted onto railcars. *Wabtec Corp.*, 815 F. Supp. 3d at 1416-17. Consistent with the scope of the Orders, freight rail couplers from China and Mexico are considered imports whether they enter mounted onto railcars or unmounted. *See Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Countervailing Duty Order*, 88 Fed. Reg. 45,135, 45,137 (Dep't Commerce July 14, 2023). Since freight rail couplers are considered imports whether they are mounted or unmounted, then any injury argument, which would properly be before the Commission, necessarily is based on imports of mounted and unmounted FRCs.

It is these imports of mounted and unmounted FRCs that the Commission in fact found to have caused injury to the domestic industry. *See* Pub. 5438 at 60. Moreover, it is these imports of mounted and unmounted FRCs that Commerce considered on remand, stating that "the ITC's injury determination is relevant to Wabtec's arguments regarding injury. Notably, the ITC did not make a separate finding of {domestic like product} for the 'attached' FRCs. The ITC included all FRCs, whether attached or unattached in its determination that the domestic industry was injured." Remand Results at 11, ECF 76 (internal citations omitted). Accordingly, Commerce's remand results did not impermissibly repackage the substantial transformation argument but instead recognized the relationship of that argument to Wabtec's injury argument, which is the subject of the Court's remand.

**8. How is the harm to the domestic industry caused by attached FRCs different from the harm contemplated by the third-country dumping provision at 19 U.S.C. § 1677k(b)(1)?**

The third-country dumping provision addresses a different kind of harm than that which was perpetrated against the domestic industry in the underlying investigation. The third-country dumping statute specifies that such a petition may be filed if the petitioner has reason to believe

8

that merchandise is being dumped in a foreign country that has accepted the GATT and the domestic industry has been injured as a result of such dumping. 19 U.S.C. § 1677k(b)(1). In the underlying investigation, petitioner was not alleging that freight rail couplers were being dumped in Mexico, the third country, and that was not the focus of the Department of Commerce's inquiry. Indeed, whether dumping was occurring in Mexico was immaterial to Commerce's analysis. Petitioner alleged – and the Department of Commerce found – that unfairly priced imports of freight rail couplers from Mexico and China were entering the United States. Put simply, they were dumped into the United States.

Defendant-Intervenor would note that no third-country dumping regulations have been implemented to date. Nor, to the best of Defendant-Intervenor's knowledge, has any such investigation ever been initiated. Regardless, the petitions at issue alleged injury due to competition with dumped imports when such competition occurred within the United States, and the Commission found that such injury did in fact occur.  Moreover, Commerce noted as much in its remand results, stating "whether the attachment of FRCs takes place in the same or third country (*e.g.*, Mexico) before entering the United States is immaterial to our determination because at the time of the FRC's entry to the United States (whether it is attached or unattached), it is an 'import or sale' of merchandise under the scope . . . ." Remand Results at 16, ECF 76.

**9.      What authorities best support your overall argument?**

*M.S. Int'l, Inc*, 32 F.4th; *Ad Hoc Shrimp Trade Action Comm.*, 33 C.I.T., 637 F. Supp. 2d.; and *Mitsubishi Elec. Corp.*, 12 C.I.T., 700 F. Supp., stand for the proposition that Commerce owes deference to the petitioner's intent regarding what should be included in the scope of an investigation and any resulting orders, and that Commerce should only modify the scope when the scope language is overly broad or otherwise defective, or to prevent circumvention or evasion. As

discussed above, those narrow circumstances do not apply in this case, and deference to the

petitioner's intent of what should be included in the scope should remain unchanged.

**10.    Are there any recent or pending Supreme Court, Federal Circuit, or USCIT cases that may affect the court's analysis?**

Defendant-Intervenor is unaware of any pending Supreme Court, Federal Circuit, or

USCIT cases that may affect the Court's analysis.

Respectfully submitted,

*/s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

Buchanan Ingersoll & Rooney PC
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000
daniel.pickard@bipc.com

*Counsel to Defendant-Intervenor Coalition of Freight Coupler Producers*

Dated: July 21, 2026

## CERTIFICATION OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(2) of the Standard Chambers Procedures of this Court and the Court's letter of July 7, 2026, ECF No. 89, that the answers to the Court's questions contain no more than 2,715 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

Dated: July 21, 2026                                     */s/ Claire M. Webster*
                                                         Claire M. Webster